Good morning, Your Honors. My name is Mark Erelmick. With me is Nancy Tompkins. We represent appellant and plaintiff below CSL. I'm going to try to reserve four or five minutes for rebuttal. This appeal presents the question of whether a litigant, such as CSL, who has given up claims in litigation along with the remedies to which it was entitled, such as money damages and other equitable relief, in exchange— Which it was entitled had it prevailed. Pardon me? To which it was entitled had it prevailed. If it had prevailed, yes, that's correct, Your Honor. Had given up these claims in exchange for a final judgment and injunction, is entitled to have that injunction enforced completely, fairly, and consonant with the history and purpose of that injunction. Instead, the district court's order renders unenforceable the injunction that CSL bargained for. CSL brings this appeal because in denying CSL's contempt motion below, the district court failed to correctly construe the injunction, a question which this court reviews de novo. The district court failed to apply correct evidentiary standards, which this court also reviews de novo. And the district court manifestly failed to weigh, consider, and appreciate the evidence before it, which this court reviews under a deferential standard. For these reasons, the district court should be reversed, in this case remanded for imposition of the remedies sought below by CSL. Well, let's assume that—I note that I guess the district court, through the magistrate, who had been involved in this particular proceedings, invited both sides to present some sort of protocol as to, you know, how to assist the district court in interpreting the two paragraphs and in how the testing would be done. Neither side did that. So basically the district court's in a position that there's a consent decree or there's a, you know, an agreement as to what the parties agree to. And let's just assume that there isn't any— there is no testing out there that would meet Dawbert's standards for purposes of admissibility before a jury. How is it that you can now require Dawbert to be met when this is the only evidence that's out there? Well, Your Honor, as the district court acknowledged, this is the only protocol available for measuring the creosote-reducing capability of a fire log. The district court also acknowledged that this was the best science available, and the district court noted that this was an intuitive protocol. It is CSL's position that Dawbert does apply here, and that the protocol, especially as implemented by CSL's independent testing lab— So why didn't you put that in your agreement, that that was what was necessary to prove one way or the other? Well, Your Honor, I think in the absence of any other provision, I think that the parties assumed that the court would apply all of its procedural protections, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, would all normally apply. And the parties could have agreed not—you know, presumably the parties might have agreed to waive the protections or the procedural protections of the Federal Rules of Evidence, but this they did not do, and I do not believe was proper for the district court to read this into the agreement in the absence of any such evidence in the record. All the court had before it was a fairly short final judgment and injunction, and it was silent on whether Federal Rules of Evidence would apply or not, and in that silence— Excuse me, but just to clarify, when you say it wasn't proper for the district court to read this into the agreement, this meaning you mean Dawbert's standard? No, the waiver of Federal Rule 702 as explicated by Dawbert. We do not believe it was proper for the district court to read in the waiver of Dawbert, the waiver of Rule 702. Well, but it read in the waiver on only paragraph 2, right? Correct. It didn't read in the waiver in paragraph 1. Correct. And you never challenged the district court's decision that Dawbert applies to paragraph 1, right? Pardon me? You never challenged the district court's decision that Dawbert applies to paragraph 1. You argued instead that your evidence met Dawbert. Right. Our position below and our position in our papers is that Dawbert applies and that our evidence met Dawbert and should have been admitted in connection with— Applies to paragraph 1 or to both paragraphs? Both paragraphs. Dawbert should apply to both paragraphs, and CSL's evidence met Dawbert and should have been applied to both paragraphs. Well, so if we agree with the district court that your evidence fails under Dawbert, don't you lose under paragraph 1 then? No, we do not agree that our evidence fails Dawbert. Oh, I see. But if you—if we found that, then you lose on paragraph 1, right? That's correct. If this court affirmed to the district court that neither party's evidence met Dawbert, then we would not prevail on paragraph 1. But by the same token, neither could the defendant below Imperial prevail on paragraph 2 because if neither party's evidence met Dawbert, then there is no evidence, no admissible evidence for Imperial to meet its burden. You know, the district court interpreted the consent injunction, right, the way you just described, as applying Dawbert to paragraph 1 but waiving it as to paragraph 2. And was that interpretation made just as a matter of textual analysis or was there some extrinsic evidence submitted on that or was it the party's intent or how did the district court come about in making that distinction as to, one, Dawbert applies to paragraph 1 but not to paragraph 2? I will—Judge Tashima, there was no extrinsic evidence of this and certainly the— So it's a matter of the textual interpretation by the district court? Well, I think what the district court was struggling with was its initial conclusion was that neither party's evidence met Dawbert. And it was trying, I think, to find some way for the—for at least with regard to paragraph 2, trying to find some way for Imperial to meet its burden. And so it—it came upon this solution to the problem that was created by its misapplication of Dawbert to the party's evidence. This solution meaning under paragraph 2, the evidence doesn't have to meet the Dawbert standard? Correct. And there's nothing in the—certainly nothing in the final judgment and injunction as— and I took part in those settlement discussions and I can guarantee this Court that that was never raised below. So there is no extrinsic evidence. There's nothing in the document to suggest that the parties waived the Rule 702 or the parties ever agreed that—that Dawbert need not be met. Well, just offhand, it seems strange to me. You know, I can see the district court, you know, deciding one way or the other, either the parties waived Dawbert or they didn't, but it's hard for me to understand the rationales to say waived it on paragraph 2 but not waived it on paragraph 1. I agree with Your Honor, perhaps. And he really doesn't—the magistrate judge really doesn't articulate the reason for that distinction in his interpretation of the stipulated injunction, does he? No, I do not believe the magistrate judge did. Well, I think Dawbert kind of confuses this whole thing because I'm not really— it seems to me you have the consent decree, you know, you have the documents, you've got paragraph 1 and paragraph 2, you have the evidence that both of you presented, and you've got whatever either of your burdens of proof are, and the Court's got to look at that because that's what's out there. Right. And in implying Dawbert and in failing to admit CSL's evidence, particularly with regard to paragraph 1, the district court did not apply Dawbert correctly. Dawbert is a flexible standard. It's not the rigid Frye standard. And Dawbert—instead, the district court went through the factors that are in the Dawbert case and said there's no peer review, there's no error rate, therefore it's not admissible. But Dawbert itself states that these factors are not a checklist. And subsequently in Kumho, the Supreme Court stated that some cases, these factors may not apply to all cases. And this is that case. We have an area of very limited interest, very narrow area of science. Fairly simple science, but nevertheless, very narrow interest. There's not—there are no journals on this topic. You have— It seems to me the one thing that supports the district court's determination that Dawbert's measures as not being abused is that both sides presented evidence pretty much based on the same protocol but coming to radically different conclusions. That alone, don't you think, could be taken as an indication of unreliability? Well, you know, I think that the district court may have said that, may have felt a pox on both of your houses. You know, we have inconsistent results notwithstanding similar protocols, but unfortunately it then inoculated Imperial for purposes of paragraph 2 of the injunction. What the district court manifestly failed to do was actually to consider the science behind—as simple as it was—the science behind these tests. We're dealing here with a product that purports to remove accumulated creosote. And both parties followed a very similar protocol. The principal difference between the protocols was that Dr. Hauck's protocol controlled for the effects of heat on creosote reduction. Both parties acknowledge that heat alone is a creosote removal agent. Dr. Hauck controlled for that. That's why that evidence is reliable, and that's why it's relevant. On the other hand, Imperial did not control for heat. In fact, they manifestly conflated heat. We see the temperatures there. In fact, if you look at test number 1, they had a control stove. No SuperSweep Plus, just burning wood. They had an 80 percent reduction in creosote. That shows how effective heat alone can be in reducing creosote. Also in test number 1, you had a SuperSweep stove that only had a 70 percent reduction. That's inferior to the control stove. There was also a SuperSweep stove that had a 90 percent reduction. If you average those together, you end up with a very similar performance to the control stove. Imperial's testing intentionally introduced heat, and it confused the issue. There's no way for Imperial to separate out in its results how much heat removed and how much of SuperSweep Plus removed. The only protocol that could do that was Dr. Hobson. This was an issue that, frankly, the district court did not appreciate. The district court also did not appreciate the significance of a chimney fire in test number 1 dismissed as a minor event in the laboratory. Well, in the laboratory, you have a relatively small amount of accumulated creosote, perhaps a kilogram. In a home where this product may be used, and a homeowner may use it according to the same protocol that Imperial recommends, there may be tens of kilograms of accumulated creosote. That's a much different situation. I'd also like to address, Your Honors, the construction of the consent judgment by the district court. And this plays in, to a certain extent, to the evidentiary issues as well. The difference is between paragraph 1 and paragraph 2. The district court committed legal error when it decided that Imperial's obligation to demonstrate the efficacy of the SuperSweep Plus meant something less than prove. Demonstrate and prove are synonyms. You can find that in any thesaurus or looking in the dictionary. There is no evidence in the record that the parties used demonstrate in any manner other than to put the burden on Imperial to prove the efficacy of its product. Indeed, since the district court concluded, after weighing Imperial's subdouble evidence that, quote, the court does not know whether the SuperSweep Plus does what it claims, well then it seems to me that Imperial did not prove its claims to the district court as required, or demonstrate its claims to the district court as required under paragraph 2 of the injunction. The district court also committed legal error when it construed reducing creosote with adding creosote at a reduced rate. The error is not only obvious on its face, it makes no sense in the context of a product that is supposed to remove previously accumulated creosote. Much as a low-tar cigarette fails to remove accumulated tar from a smoker's lungs, a log that adds creosote, albeit at a reduced rate, does not help reduce creosote. The SuperSweep Plus is, at best, a low-creosote log. Adding creosote does not reduce creosote and does not provide any net benefit to the homeowner who has laid out $10 or more for a single log. The district court also committed legal error when it construed the prohibited claims so narrowly as to leave them readily avoided and the injunction toothless. For example, the district court held that the prohibition against the claim helps eliminate dangerous creosote may be avoided by modifying the claim to helps reduce dangerous creosote. This is a distinction without a difference. The district court should not have indulged imperial semantic games. Moreover, the district court should not have required CSL to produce, in a contempt proceeding, evidence that consumers' view helps reduce creosote as being synonymous with helps eliminate creosote. This court, in the Harcourt Brace case it's cited in our papers, previously addressed the need for evidence of consumer reaction in a contempt proceeding arising from settlement of a false advertising action. In Harcourt, as the district court has stated here, the defendant urged that it had avoided the literal terms of the injunction and that evidence of consumer reaction to its new claim was required to support a finding of contempt. This court rejected that notion, noting that, quote, which common sense may proceed without specific evidence. The district court failed, manifestly failed, to construe the injunction correctly, failed to correctly apply the appropriate evidentiary standards, failed to construe Daubert correctly, and had it construed Daubert correctly, it manifestly failed to weigh and consider the evidence before it. I would like to reserve the balance of my time for rebuttal unless there are any immediate questions. Okay. Good morning, Your Honors. Kenneth L. Wilton on behalf of Appellee's Imperial Brush and Imperial Building Co. and with me today is Francis Torrance in my office. Listening to the argument today, I'm still convinced that CSL has not presented anything before this court that would cause a reversal. The question here is whether or not Judge Spiro, in interpreting a consent judgment that he held broker, abused his discretion in determining that, in fact, Imperial was not in contempt of it. And drilling down to the detail of that, did Imperial take all reasonable steps? No, he abused his discretion. The question is whether he correctly interpreted the injunction, right? And that's a de novo issue. That's a de novo issue, Your Honor, affording due respect to the trial court in light of the trial court's intimate familiarity with the actual contract, the consent judgment that's being construed. In this case, in his order, Judge Spiro states why he is construing it in a fashion that allows the evidence that both parties presented to be considered. And he does that. The only reason he really gives is that, well, because there's no other evidence, right? This is the only kind of evidence that's available. That's correct, Your Honor. And he was encouraged to do that by CSL, which stated at the oral argument that this was the best evidence and that the injunction would be toothless if it was not admitted. You see, he doesn't rationalize it. This is my problem with his ruling. He doesn't rationalize why this set of evidence is good enough for paragraph 2 but not good enough for paragraph 1. Why should that be so? In other words, why shouldn't you have a uniform test for both paragraphs of the injunction? I beg to differ, Your Honor. He does rationalize that in that he states that in determining whether or not the evidence presented on paragraph 2 is sufficient in interpreting the contract, he looked at the tests that had been presented by everybody. With regard to paragraph 1, the burden, though, was on the plaintiff to prove by clear and convincing evidence that there were false statements. And he concluded that given that burden, Rule 702 applies. But more importantly, he then goes beyond that and says even if Rule 702 does not apply, he then considers that evidence. He spends several pages of his opinion considering that evidence. Well, what's the basis for concluding that 702 doesn't apply? In his case, it was really the better part of caution. With regard to Rule 702 in paragraph 2, it doesn't apply because that was the only testing that was contemplated by the parties. It was the only types of testing presented on the motion. And it was urged by CSL both below and here that it would not apply. Your Honor, it's the only testing that's contemplated by the parties. If that's what the record shows, then why isn't that testing sufficient for paragraph 1? If that's all there, that's all, you know, and he says that's the only test that's available, it's all that anybody can use in this situation, then why isn't that good enough for paragraph 1 if it's good enough for paragraph 2? I don't understand the distinction. I'm not sure I am. The same equal paragraphs with the same injunction and violation of either is contempt. Your Honor, he doesn't really give a rationale for a lower standard on one as opposed to the other paragraph. His rationale, as stated in the opinion, is simply that on paragraph 1, the burden remains on the plaintiff to come into court with admissible evidence. Okay. But I believe that the burden is on you. But I believe the district court recognized that in light of the state of this testing and the fact that it probably will never mature into something that is a well-developed science, that he still considered that evidence with regard to paragraph 1. That means paragraph 1 is illusory, doesn't it? No, it doesn't, Your Honor, because he can't ever prove a violation because the only test available is unreliable, then it's illusory. The evidence that the court considered, though, the court's determination was based on its consideration of the very shallow record that was presented by CSL, which was the single test. He compared it to what was presented by Imperial and concluded that CSL had not met its burden. In addition, the court spent considerable time speaking to each of these factual issues, the heat issue, the testing issues, the measurement issues, making fact determinations, fact determinations that cannot be reversed on appeal unless CSL has presented something to this court that this court can develop a firm conviction that Judge Spiro was wrong. But Judge Spiro spent, as you can tell by his 35-page opinion, spent considerable time going through all of the declarations, all of the evidence, and making those determinations very carefully from start to finish. Several of the attacks that CSL has made here simply don't find any support in the record. For example, CSL has stated that Judge Spiro equated the word reduce with the word increase. In fact, what Judge Spiro was speaking to was our citation to the early tests on the early log that CSL had presented, and those tests, we felt, bolstered Imperial's position. Those tests also showed that the super-sweep log had a considerable effect on the amount of creosote deposited in chimneys. There was no misconstruction of the consent judgment here. It was simply just an analysis of additional evidence that we presented in opposition to the motion for contempt. In short, and I could go on and discuss this, but I believe our papers pretty much, they do cover it. In short, there's a statement in CSL's brief that Judge Spiro bent over backward to find that Imperial was not in contempt here. And Judge Spiro, who was in the position, the best position, to determine what the parties meant, what the parties intended by their contract, he would have been in the best position to determine whether or not Imperial had shown disdain for or contempt for his judgment. So however you want to characterize what he did, and I would characterize it as an extremely thorough and careful analysis of the facts and the evidence presented to him, he didn't bend over backward. He simply reached the right conclusion. Thank you very much. Thank you. Rebuttal. Thank you very much. This long morning calendar is near an end. I'd like to address a few points that Mr. Wilton made on behalf of Imperial. He argued that the district court was in the, the judge was in the best position, and he probably was in a very good position, but that did not permit him to vary the plain meaning of the consent judgment. The words have meaning. CSL submitted, agreed to submit to this injunction to trade its case in favor of an injunction in judgment. And when it, first time, of course, it sought to enforce the injunction, it was successful. The second time, it learns that the best science available and the same evidence that was used in the underlying case is no good. And as Judge Tashima suggested, that makes paragraph one of the injunction illusory. Did the judge ultimately, though, as Appellee's counsel indicated, look to and just say, okay, but I'm still, even if the Dawbert issue aside, I'm going to look to all of the evidence, and you still don't win. Did the judge do that? Well, the judge did that with regard to paragraph two, not with regard to paragraph one. But the district court failed, manifestly failed, to consider the evidence before it. First of all, it didn't, I think the most telling thing in that entire lengthy opinion is, first of all, Imperial had the burden to demonstrate its product worked, and the district court concluded, I don't know. So those evidentiary issues aside, on the face of the order, Imperial did not meet its burden. Well, I'm not sure that that's right, meaning we're kind of, it's kind of tricky. The obligation is that Imperial have a demonstrable, the fire log product have the demonstrated capacity. On the other hand, you're coming in seeking contempt, so you've got a burden. That's true. But in negotiating the consent judgment and injunction, the parties agreed to put the burden on Imperial to demonstrate that. Now, the way the district court addressed this. Is there any evidence of that agreement other than the agreement itself? When you say the parties agreed to put the burden on Imperial, is there any evidence of that agreement except for the agreement itself? No, but this is how the district court interpreted the injunction, and there's been no disagreement on that point. So it seems to be agreed among, between the parties as well as the district court, that that put the burden on Imperial to make that demonstration. And is your burden to show that they've not met their burden? Right. And apparently, we succeeded because the district court concluded that it doesn't know whether the product works as advertised. And if it doesn't work as advertised, if the court's not persuaded of that by what— Well, he may have a different definition of demonstrated than you do. That's—that may well be true, and it's clear that the district court did adopt a different meaning of demonstrate, but we believe that was—this is obviously an issue of construction of the injunction. This is an issue this court reviews de novo, and we believe the district court plainly construed demonstrate to mean something very different from what its ordinary dictionary meaning would be. Now, I'd also like to say that, you know, what we've talked about, well, if we set Daubert aside, we can't set Daubert aside. Daubert applies here because Rule 702 applies here. Rule 702 applies to any and all scientific evidence. This is scientific evidence. It applies. Now, if it applies, and if Imperial is to meet its burden on Paragraph 2 of the injunction, it has to provide some admissible evidence. Now, the district court found Imperial's evidence inadmissible. It found that it did not meet Daubert, although then it admitted it under sub-Daubert standard. Imperial has at no time in its favor sought to defend its data as meeting Daubert, and certainly because of its conflation of heat with the effects, if any, of the log, certainly that data is untrustworthy, and the reasons are more fully explored in our papers. Then, therefore, since Daubert applies and Imperial's evidence doesn't meet Daubert, it had no evidence to meet Paragraph 2 of the injunction. So if this injunction is not to be illusory, if this injunction is to have meaning, then Daubert must apply, and Daubert correctly applied means that CSL's evidence is admitted and Imperial's is excluded. Let me come back to Paragraph 1. Who has the burden of showing falsity? May I continue, Your Honor? Obviously, CSL has the burden by clearing convincing evidence on Paragraph 1 of the injunction to demonstrate falsity. Well, Judge Spiro says, among other things, well, I don't know. I guess that means he doesn't know. So maybe it's true, maybe it's not. So even when he considered the evidence, if he looks back to Paragraph 1, you haven't demonstrated falsity. Well, Your Honor, I believe that Judge Spiro's comment with regard that I quoted before, the conclusion of his order, I believe flowed from his analysis of Imperial's data under Paragraph 2. But he says, I don't know. If he doesn't know, having considered the test performed by both sides, I guess he's not in a position to determine whether or not it's false. If you have the burden to show that it's false, even if he'd admitted it, I don't think you could have carried the burden. Well, I don't believe that Judge Spiro did much in the way of analysis of Paragraph 1. He simply said, the party's evidence don't meet Daubert. I'm going to apply Daubert to Paragraph 1. Thank you, Your Honors. Thank both sides for your argument. The case of CSL v. Imperial Building Products is now submitted for decision, and we are on adjournment until tomorrow morning. Thank you.
judges: Tashima, W. Fletcher, Callahan